Thank you for hearing me today. In reviewing my materials, I noticed there are several points I'd like to initially make. One deals with whether we have a substantial overlap of operative facts. And in this case, I'd like to point out that the Court of Claims ruled just compensation based on 1997 mineral leases granted by the United States. The quiet title action, which was the previously filed suit, was filed in 1996. So that the very basis upon which the Court ruled had not even occurred in 1996 when the quiet title action was filed. Mr. Gray, your two complaints are almost superimposable with respect to the factual recitation. Doesn't that clearly indicate that the case is governed by Tahoma? No, sir, it doesn't. This is the situation. We have notice pleadings. We're dealing with a supplemental complaint later filed. In Tohono, the same complaint could have been filed in one court and one court deal with the issues. I know that's not dispositive here. You're saying that the remedies might be different. Yes. What is important here is that the facts that relate to a quiet title action are dealing with thieves and that sort of thing. Those are different facts than which deal with takings cases, the leasing, the military operations. Those are different facts. And the question then is, how do we measure these facts? Now, in Tohono, it was a 12B1 motion, because those motions must be filed prior to pleading and must be resolved, of course, prior to trial. Well, in this case, there was no 12B1 motion filed prior to pleadings. It wasn't even filed until after the trial on the merits and after the court of claims judge had ruled that just compensation was due. 12B1 is not the proper procedural vehicle. I'm not suggesting that a motion to dismiss under section 1500 should not be considered. What I'm saying is that we should look at the jurisdictional facts and not at the pleadings. Because the pleadings changed, the facts changed. In 1996, we filed the quiet title action in Louisiana. The United States questioned jurisdictional issue about it, and we filed, as is sort of the custom, we then filed the taking action in the court below here to preserve the statute of limitations. The court below immediately stayed, and the case was stayed until completion of the quiet title action. When the quiet title action was resolved, we filed a supplemental complaint. The supplemental complaint deals with post-filing events from the original. The supplemental complaint deals with, say, 40 additional paragraphs, I'm just trying to remember, that deal with… I'm sorry, ma'am. Does your argument this morning rest on our determining that it's the supplemental complaint that controls and not the original complaint? I feel like my argument rests on the fact that the court is not limited to the pleadings at all. That is, 12B1 motions deal with pleadings, because that's what's there. They're filed prior to pleading, and so the complaints below are considered. And all of the 12B1 motions refer to the pleadings and an evaluation of the pleadings. But since 12B1 wasn't timely in this case, the matter should not be limited to the pleadings, because this is not a 12B1 issue. We should look at the jurisdictional facts. And when we look at the jurisdictional facts, we see that the time period involved in a quiet title action stopped in 1981. We see that the time period involved in this case didn't start until 1992, when the prescriptive periods would have run. We find that the different government conduct, that is, mineral leasing and military operations are different than acquiring properties in a quiet title situation in the 1940s. So what I'm suggesting to you is that this is a situation that is more akin to, say, trusted integration, where the court recognized that the different contract with different time periods, that is, this court, was not limited by Tohono, and 1500 didn't apply. And at the court below, Stockton has since found similarly, and also at the court below is the... Do you and the government agree that if instead of a supplemental complaint, the original case had been dismissed and a new case filed, there'd be no issue? I think that is true. I think that had we filed a new case in 2003, we would not have been barred by prescription after Group C, that is, by statute of limitations. We would not have been barred, and we could have filed a new complaint, and yes, black and black. Isn't the supplemental complaint even more so affected by 1500? Because there was a district court case pending? Are my facts wrong? Your facts are wrong. The district court was over. It was over. The district court matter was over. We didn't file the supplemental complaint until the United States Supreme Court had denied ribs. That's when we filed it. It was over. And at that point we could have filed a new complaint. That is correct. We did not. We could have. And the 2003 complaint, the supplemental complaint, addresses mineral leasing. And the mineral leasing is the mineral leasing that occurred in 1997, which had not occurred in 1992 when the original district court suit had been filed. So it's totally, it's a different time period. It's a different set of facts. It's different government conduct. But are you trying to make the point that because you could have but did not file a new complaint in 2003, we should consider the supplemental claim as if it were a new complaint? If we are limited to the pleadings, then that is true, because that's what was done in black. Yes. But I don't think I'm limited to the pleadings. I think that the facts themselves… Wait, what was done in black? It's black versus Secretary of Health and Human Resources. In that situation, the court ruled, thus, as long as petitioner could have filed a qualifying petition within the limitations period, there is no sound reason to prohibit the petitioner from filing a supplemental plea. And as to the matters that the court ruled upon, we could have done that. Yes. Instead, we filed a supplemental plea. Was there been any limitations factor at all, either in terms of retrospective recovery for injury or whatever? Actually, it had been a separate complaint rather than the supplemental? As to the relevant statute of limitations, no, there would have been no difference, because the statute of limitations was 1992, and the government leasing that we were complaining of didn't occur until 1997. And so, with the supplemental complaint having been filed in 2003, it would not have been subject to statute of limitations. So, I guess the points I really want to make sure that I am making is that there would not have been a raised-judicata application in the quiet title action, and in this case, that's different than, of course, in Tohono. This case would not have been subject to dismissal when it was filed under Loved Ladies, because, you know, of course, Tohono changed that rule. We're dealing with post-filing events here, and I think it's important that Congress has created two different remedies, that is, the problems that the Quiet Title Act didn't even exist until more recently. Congress fully understood the situation with 1500 when it passed the Quiet Title Act, and when we filed the Quiet Title Procedure, we were in a situation of choosing one of the remedies that Congress made available, and it certainly did not eliminate the—it wouldn't have given us that remedy and then taken it away from us in 1500. Thank you. Let's hear from the government, and we'll save you rebuttal time. Please file your— May it please the Court, Katherine Barton for the United States. So, first of all, the law clearly provides that you judge Section 1500 jurisdiction based on the complaint, and that is, under this Court's decision in DICO, which specifically held you had to look at the complaint, at the pleading, and even in the Supreme Court's decision in Keene, it said—it held that you couldn't look at—consider that a district court action had been dismissed before the government's motion to dismiss under Section 1500 had been considered in the Court of Federal Claims, because you had to look at the time the suit was filed. Section 1500 strips jurisdiction—it precludes jurisdiction from ever, you know, adhering in the court. You want to assume that this case is distinguishable from Black? Yes, this case—in fact, Black—and we have a part of our brief that says that Black may even be overly generous about allowing under this current Supreme Court law about how you secure subject matter jurisdiction. But, anyway, assuming that Black—the Black reasoning is applied, Black held that you had to look at the statute to determine whether Congress allowed the jurisdiction to be cured. And as an example of a statute that did not allow jurisdiction to be cured, it cited Section 1500, and it did that because it was similar to other statutes that the Supreme Court had held and that Black cites to as not allowing curing or restoring or creating jurisdiction where none existed because it said you couldn't commence an action. Or—and language like that, that you couldn't even begin an action, and that's the same here where the statute says the Court of Federal Claims shall not have jurisdiction. You're saying the supplemental complaint was of no help, should be of no help to you? It's a nullity. In fact, I mean, in our view, the CFC never had jurisdiction over the case. It's the—exactly, it's the other way around. The initial filing was a nullity because of 1500 until the supplemental complaint was filed because cert had been denied from the Fifth Circuit and all the rest of it. The action was viable at that time, but the initial filing was a nullity, and it seems to me to be very strange. I mean, the idea here is to protect the United States from having to defend in two forms going back 150 years. It isn't as if there's any sort of psychological inequity in the fact that different remedies, four different remedies, have to go to different courts. So if the first filing was a nullity, it wasn't until the supplemental filing—and you agree that if instead of a supplemental filing there had been a new filing, we wouldn't be here. It could just proceed on its merits. If there was a new filing, that's correct. We would not be here. But it's a hyper-technical way for the government to avoid its responsibilities. We are just here—Congress has enacted Section 1500. Congress, it's a waiver on the—it's a condition on the waiver, a limitation on the waiver of the government's sovereign immunity in the Court of Federal Claims. And those must be strictly constricted. So the government doesn't have to defend in two different forms. Everything that I've seen says that's the reason for 1500, to protect our great government from having to defend itself in two courts at the same time. That is the purpose, but the courts have also held that just the fact that cases dismissed from the district court and—or the district court action stayed— it was litigated, it was appealed to the circuit, they took it to the Supreme Court. So it wasn't as if it was dismissed, it was litigated fully, and it was over before they revived by supplemental complaint. But I'm just saying that the purpose of the statute, it's the same effect. In fact, if you could— But the purpose is fulfilled. No, but the— I'm arguing with you. I want you to tell me why. I know, I was trying to—but the court—I'm just saying that under section 1500, the courts have held that you can't—you can't stay a district court action and allow the CFC action to proceed and then go do this. It doesn't matter that it's at two different times. But as I understand your argument, it's that the government didn't have to proceed at two different times. I mean, didn't have to proceed at the same time, and it dealt—they could—if it had—it dealt with them at different times. That's what happened here. They didn't proceed. They—it was stayed in the court of federal claims until everything was over. Right. Well, I mean, it is our position that black doesn't allow the curing. There was never anything for them to file. The case was a nullity. There wasn't a case for them to file their supplemental complaint in. And that you could just simply circumvent the requirement of section 1500 if—I mean, the courts have provided—I mean, the holding is of key in the Supreme Court that it doesn't matter if a government's motion to dismiss under section 1500 is determined—if the district court action is gone. If it's been—if it's been dismissed, if it's been decided, if it's gone. That holding would be rendered meaningless if all you had to do was file a new complaint at that time. It would—it just can't be that the Supreme Court's ruling in Keene could have been cured if they just filed a new complaint. The Supreme Court said, even in Tohono, that what they would have to do in order to proceed would be to dismiss their district court action and file a new claim in the Court of Federal Claims. You cannot proceed under the same action no matter what happens with the district court in the district court. And let me—I would also like to point out that the—I recognize if this doesn't cure your argument, another point about the 2003 complaint is that assuming that you agree that it doesn't matter that the district court action was done, but you want to consider the argument of the appellants that the complaint—that the action in the 2003 complaint is different. That is clearly not correct. It's just the other way around. It does matter. The district court action was done. It was appealed. It went to the Supreme Court. It was all over. And I gather you agree that if they had then just filed a new complaint, there'd be no problem. Yes. Would there be no problem or would there be a race judicata issue? We would have to look at race judicata issues, but there would not be a jurisdictional problem. There wouldn't be a 1500 problem. Right. And in 1500, you have to have actions pending in two courts. So, yes, that's the question here is whether you can cure, in the same case, the jurisdictional defect that precluded the CFC from ever having jurisdiction over the case. And as I've explained, being able to file such a complaint would render Keene and other decisions of this court a nullity because you would just wait until the district—you could just do what happened here. Stay the court of federal plans action, wait until the district action is done, file an amended complaint. And all the time the jurisdiction has to be proper at the time the action is filed. That's correct, in 1998. And it can't be cured with a supplemental complaint. Exactly. Exactly. And, as I said, if you look at this, it's true that they ended up, that the appellants ended up getting relief, the plaintiffs ended up getting relief based on events that happened after the time they had filed their district court complaint. But, if you look at their allegations, they just sort of managed to wind their way to that point, way at the end of the litigation. The complaints, although there's more allegations, you know, they're more detailed. In the 2003 complaint, they are the same as in the 1996 and the 1998 fundamentally, the conduct out of which the claims arose was that the United States had precluded them from mineral leasing. And that was the basis for their quiet title action because they said that the United States barred them from exercising their mineral rights and thus they couldn't stop the prescription law of Louisiana which said that if they didn't exercise their rights for a 10 year period, the mineral rights went to the United States. They said, well that doesn't apply because the United States, we couldn't exercise our mineral rights because the United States barred them. And they also, and they basically, all their takings claims were based, in fact they have a taking claim in the district court. They had takings claims in both cases so we're not even, we don't even have to look at the quiet title act, you know, takings interplay. They were taking, they never dismissed their claims, their takings claims in the district court. So all three complaints fundamentally rely on the argument that the United States through a series of actions, many moratoriums, de facto moratoriums, army bombing and things on the land that they couldn't go in and lease. And in fact if you look at the district court opinion, it explores actions between 1992 and 1996 in that opinion to determine whether that could have precluded prescription. It did consider that the title went to the United States before that but it said, well even if it didn't, it went on. So they were arguing the whole time period in the district court, the whole time period in the, well almost the whole time period in the court of federal claims. And if you go back and look at the decisions in the court of federal claims, there were several, you can see the evolution of the case. First they're saying it was continuing claims doctrine allowed them to go way back. Then they sort of go up to 92, still considering that what they filed was an amended complaint that relates back in the second opinion, they're still arguing for 92. And even in the final opinion in 2010, Judge Firestone says you can't, they're arguing events in 1995 which is outside of the six year limitations period from 2003. And Judge Firestone said no on the merits that you're claiming an assertion of title is it taking and that's not enough to have it taking. So all the way to the end, they were still trying to seek relief before, based on the original complaint, the statute of limitations in the original. So Mr. Gregg can walk outside, go to the clerk's office, file a sixth amendment complaint and everyone's home free? No, their claim that what they were awarded money for now ended in 2001, so they would be outside of the time period. For monetary damages which they couldn't have gotten? In the court of federal claims. Well which they couldn't have gotten in the district court actually. Oh well they couldn't have gotten as much. Well they had a $10,000 limit. Right. It's still the Tucker Act. Right. But they sought injunctive relief. Not, no, they had a taking claim for compensation in the district court. They argued in the alternative. They said either we want title or we want money, which is sort of an odd argument because you would think they couldn't get money for a taking if they didn't have title. But they asked for $10,000. No, I understand that's why they filed their claim in the court of federal claims. Clearly they wanted more money and they recognized they needed to do that. But the relief. That's the most, I guess there's a cap in the district court under the Tucker Act. Exactly. But the Supreme Court has made it eminently clear repeatedly that, I mean you don't look at the relief, that's Tohono, you don't look at the relief that is awarded in it. And the fact that you can't get relief, I think it even says in Tohono, the court says that distinct relief of the CFC is the norm. And it's very rare that there would be sort of overlapping relief or be able to get what you wanted entirely in one court or the other. That's the norm. But that's how the Supreme Court applied Section 1500 as a subject matter jurisdictional limitation and condition on the government's sovereign immunity created by Congress that it must interpret strictly. And without regard to any concerns for equity and leaving it to Congress to fix the statute if Congress thinks it's not serving a purpose anymore. Okay, any more questions? Thank you. Thank you, Ms. Brighton. Ms. Gray. Just a few matters. Section 1500 doesn't mention pleadings. Section 1500 doesn't limit its application to analysis of pleadings. And if we're talking about operative facts, which the Supreme Court says we must, I would like to point out that we stipulated facts in the Court of Claims. And there are 149 stipulations of fact, A222. Fifty of those facts didn't exist until after 1997. That is, the dates of the facts were 50 of the facts were after the district court case had been filed. The United States filed not less than 80 exhibits in the Court of Federal Claims that did not exist when the quiet title action was filed. So that what we're talking about are different operative facts, different timetables. And I think that we should be able to look at those jurisdictional facts and determine whether there is a substantial overlap. Now, if we're limited to pleadings, which we're not, Tohono was a 12B1 case. This is not a 12B1 case because 12B1 isn't timely. But if we're limited to the pleadings, then we must look at the supplemental complaint because it was timely filed within the statute of limitations. And had we ever known that the United States Supreme Court would be issuing Tohono, I will assure you we would have dismissed and filed a new complaint. To think that after a full trial on the merits in 2010, with 40 witnesses and days of testimony, that we've got to go back and look at notice pleading filed early on to determine whether the court has jurisdiction, I don't think that's what the Supreme Court intended for us to do. But if they did intend for us to do that, then our supplemental complaint should be considered as a de facto new complaint, and that would give us jurisdiction. Thank you very much.